UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

MICHAEL WILLIAMS                                        CIVIL ACTION

VERSUS                                                  NO. 12-1274

DISTRICT ATTORNEY PAUL CONNICK, ET AL.                  SECTION "F" (3)

ORDER

On January 8, 2014, Plaintiff's Motion to Compel Discovery from Defendant Paul Connick, Jr. and for Fees and Costs [Doc. #111] came on for oral hearing before the undersigned.  Present were Jason Levy and Benjamin Haley on behalf of plaintiff and Glenn Adams, Ralph Alexis and Leandro Area on behalf of defendant Paul D. Connick, Jr.  After the oral hearing, the Court took the motion under advisement.

Also before the Court is Plaintiff's Re-Filed Motion to Compel Discovery from Defendants Grey Thurman and Newell Normand.  [Doc. #125].  This motion originally came on for oral hearing before the Court on October 16, 2013.  On October 30, 2013, this Court denied the motion at that time because Thurman and Normand had moved for summary judgment on the ground of qualified immunity.  [Doc. #84].  The District Court has now denied qualified immunity to Thurman and Normand.  [Doc. #123].  Plaintiff thus re-filed the motion to compel against these two defendants.

Having reviewed the motions, the oppositions and the case law, the Court rules as follows.

I.      **Background**

The facts underlying this lawsuit are extensively set out in the District Court's most recent opinion denying qualified immunity to Thurman and Normand and will not be repeated here. *Williams v. Connick*, Civ. A. No. 12-1274, 2014 WL 172520 (E.D. La. Jan. 15, 2014).

## II.   Plaintiff's Motion to Compel Connick

Plaintiff contends that Connick has failed to comply with this Court's Order dated October 30, 2013, and said failure prejudices his efforts to proceed with the preparation of expert disclosures and with the depositions of witnesses from the Jefferson Parish District Attorney's Office ("JPDA"). On October 30, 2013, this Court ordered Connick to respond to plaintiff's discovery requests. Connick has failed to produce a single document in compliance with said order.  Plaintiff asks the Court to order Connick to immediately produce all documents subject to said order; award plaintiff his attorneys' fees and costs associated with this motion; and sanction him for each day he fails to comply with said order.

On September 21, 2013, Connick agreed to produce ten case files responsive to Request for Production ("RFP") No. 7.  He has failed to do so.  Plaintiff asks the Court to order him to immediately produce the case files and sanction him for each day that he fails to do so.

With regard to alleged *Brady* violations, Connick has informed plaintiff that he need only produce documents that reflect judicial determinations of *Brady* violations and that reveal allegations of *Brady* violations in criminal proceedings only.  *Brady v. Maryland*, 373 U.S. 83 (1963).  Plaintiff maintains that these objections are not well-founded.  Plaintiff notes that there are myriad reasons why there may be no judicial determination of a *Brady* violation in documents that Connick posseses.  Citing his own post-conviction proceeding, plaintiff notes that the state dismissed the charges against him because of a *Brady* violation.  Accordingly, there was no judicial

2

determination here.  Plaintiff also argues that *Brady* violations are the subject of civil, Section 1983 proceedings – like the one here – and Connick's objection would not require him to produce documents relative to any civil proceeding.  Citing case law, plaintiff maintains that courts routinely allow this type of discovery.

And while Connick committed to produce a copy of the JDPA's insurance policy, he has failed to do so.

Connick contends that all non-privileged documents pertaining to District Attorney files have been produced electronically or made available for inspection and copying.  Connick also maintains that he has produced privilege logs on a "roll out" basis as fast as possible.  He argues that he has produced supplemental documents with regard to almost every request.  He has produced approximately 100,000 documents.  Connick notes that many of the documents had been in storage for years, and redaction was time-consuming.

With regard to the insurance policy, Connick notes that he produced 13 pages of the policy on July 21, 2013 and has since supplemented that production with additional pages.

With regard to the production of the personnel files of Ken Dohre and Roger Jordan, Connick notes that he asked plaintiff to enter a "plain vanilla" confidentiality agreement as to said files only.  Plaintiff sent Connick their own confidentiality agreement and informed Connick that he could "take it or leave it."  Connick asked plaintiff to negotiate as to his agreement, but plaintiff refused.  Connick is willing to work with plaintiff on this issue.  After the oral hearing, Connick produced the two personnel files to the Court for *in camera* review.

Connick contends that plaintiff should have raised the issue of his objections as to the *Brady* documents at the earlier hearing.  Because plaintiff failed to raise this issue earlier, Connick believed

that the issue had been resolved.  Connick contends that if there was no judicial determination of a *Brady* violation, any other documents are not reasonably calculated to lead to the discovery of admissible evidence.  Connick argues that the cases cited by plaintiff relate to allegations of *Brady* violations against law enforcement officers and not district attorneys.  Citing case law, Connick contends that prosecutors – *i.e.*, district attorneys – are entitled to absolute immunity for actions taken in their roles as attorneys because they are trained to be attorneys (as opposed to untrained law enforcement officers).

Connick lastly argues that the *Brady* request is unduly burdensome.  He maintains that even reviewing all criminal files – and each file may contain hundreds of thousands of pages – would be impossible to fulfill in any reasonable time period.

In his reply, plaintiff argues that Connick has produced only 165 pages of training and policy documents in compliance with this Court's earlier order.  Plaintiff also notes that Connick did not produce said documents until after he filed this motion to compel.[1]  Plaintiff also contends that Connick has failed to produce a privilege log for the December 31, 2013 production and for five of the case files that he produced.

The Court acknowledges that Connick is producing documents and privilege logs on a "roll-out" basis but finds that Connick is not moving quickly enough.  With regard to the majority of the requests – apart from the legal issue outlined below – the Court finds that the requests are reasonably calculated to lead to the discovery of admissible evidence.  The Court thus orders Connick to comply with this Court's earlier order and this Order **no later than twenty (20) days**

---

[1]    Plaintiff withdraws his motion as it relates to the JDPA's insurance policy and the case files that Connick earlier agreed to produce as Connick has produced the documents.

**from the date of this Order**.

The only true legal dispute here is whether Connick must produce documents that reveal allegations of *Brady* violations or only documents that reflect judicial determinations of *Brady* violations and whether plaintiff's request encompasses civil proceedings as well.  Plaintiff cites to numerous cases in which courts have allowed such broad discovery.  *See Nguyen v. Las Vegas Metro. Police Dep't*, No. 2:12-cv-01527, 2013 WL 5705352, **3-4 (D. Nev. Oct. 17, 2013); *Wright v. City of Chicago*, No. 09 C 3489, 2010 WL 4875580, *3 (N.D. Ill. Nov. 23, 2010); *Perry v. City of Gary, Ind.*, No. 2:08-CV-280, 2009 WL 2253157, **3-4 (N.D. In. July 27, 2009).

Connick is correct when he notes that these cases addressed law enforcement officers and not district attorneys.  Connick relies heavily on *Connick v. Thompson*, – U.S. –, 131 S. Ct. 1350 (2011), to support his argument.  In *Connick*, however, the Court addressed whether the plaintiff had to demonstrate a pattern of similar *Brady* violations or whether he could rely on the single-incident exception outlined in *City of Canton, Ohio v. Harris*, 489 U.S. 378 (1989).  Differentiating between prosecutors – who are trained in the law – and law enforcement officers – who are not  – the Court held that a plaintiff can not rely on the single-incident exception when the alleged *Brady* violators are prosecutors.  131 S. Ct. at 1360-64. *Connick*'s analysis applies to an application for qualified immunity by the prosecutor, not a motion to compel, and the Court has found no case law supporting this differentiation in the context of discovery.  *Connick* does not support Connick's argument here.

However, *Connick* holds that a plaintiff must demonstrate a pattern of similar *Brady* violations. *See id.*  Thus, Connick need only produce documents that relate to *Brady* violations similar to those alleged here.  In addition, the Court finds that the request is overbroad.  The Court narrows the request to a ten-year period surrounding the incident alleged here, from five years before

the incident to five years after it.

## III.   Plaintiff's Re-Filed Motion to Compel Thurman and Normand

Williams propounded discovery requests to defendants on May 28, 2013.  Defendants did not seek an extension of time but failed to respond until July 25, 2013.  Williams maintains that Thurman failed to produce any documents, and Normand produced fewer than 200 documents. Normand has failed to produce documents with regard to Request for Production ("RFP") Nos. 4, 6, 8-12 and 14.  Williams complains that defendants have been slow to produce documents and fail to respond to his telephone calls.

Williams argues that defendants must produce Thurman's personnel file.  JPSO will not produce a personnel file absent a court order.  Williams notes that he has agreed to enter an appropriate protective order.  Citing case law in this circuit, Williams notes that courts routinely order the production of an officer's personnel file after redaction of personal information and financial information.

Williams also contends that defendants must respond to his RFPs and interrogatories related to other incidents of misconduct, *i.e.*, evidentiary misconduct, witness coercion and false testimony by JPSO employees (RFPs Nos. 8-10 and Int. Nos. 3 and 4).  Williams narrowed the RFPs to include lawsuits, complaints, reports, evaluations and internal investigations related to two issues: (1) turning over evidence to prosecutors, concealing evidence and/or the failure to preserve evidence; and (2) improper interactions with witnesses, including allegations of intimidation or coercion. Defendants objected, arguing that there was no unburdensome way to respond.  Williams maintains that such evidence is relevant to his *Monell* claim.  Williams identified two prior instances of misconduct that involved Thurman yet defendants have failed to produce a single document relating

to them.  And Normand has failed to produce any documents related to prior instances of misconduct on Thurman's part (RFP No. 14).

Williams also seeks documents and information related to defendants' policies, customs, practices, or procedures related to handling and turning over evidence, interrogating witnesses and suspects, testifying in criminal prosecutions, and training, supervision or discipline of employees (RFP Nos. 2, 4 and 6 and Int. No. 2).  Normand produced five Standard Operating Procedures ("SOPs") and a Code of Conduct and no documents with respect to RFP Nos. 4 and 6.  Williams contends that he did not limit his requests to SOPs.    Normand also objected to Int. No. 2 – which seeks the identities of the individuals responsible for drafting, approving, amending and revising any municipal regulations – as overbroad.  Normand finally identified one individual who was not present at the time of Williams' investigation.  Normand stated that all earlier policies had been destroyed, and Williams argues that he can only obtain the information from those who worked on them.

Defendants argue that the request seeking Thurman's personnel file is overbroad and vague. If Williams is seeking Internal Affair records, defendants contend that these files are not in the personnel file.

Defendants assert that the requests seeking documents relating to prior instances of misconduct are not relevant to Williams' *Monell* claim.  Defendants maintain that it is uncontested that all statements taken by Landry were recorded, preserved and available to prosecutors at the time.  Defendants also argue that whether Landry's statements were coerced is not a legal issue before the District Court, as any such claim arises out of the Fourth Amendment and is prescribed. Neither is it alleged that Thurman ever coerced Landry to provide false testimony at trial.

7

Defendants also maintain that the requests are overbroad and vague.  Neither does Normand maintain such records.  Defendants lastly contend that Williams is just as able to obtain the requested information through alternative sources as they are.

Defendants argue that the request for Thurman's records is irrelevant because there is no cognizable claim that Thurman withheld evidence or coerced testimony.  Citing Federal Rule of Evidence 404(a), they note that evidence of a person's character or trait of character is not admissible for the purpose of proving action in conformity therewith.  Rule 608(a) also provides that prior wrongful acts not resulting in a criminal conviction are collateral matters.  Citing unpublished case law from this Court, defendants argues that district courts reverse magistrate rulings that compel the production of such evidence.  Defendants contend that any liability on the part of a defendant in this lawsuit arises only out of the particular incident sued upon.

With regard to RFP Nos. 2, 4 and 6 and Int. No. 2 to Normand, defendants contend that the requests are overbroad and unduly burdensome.  They also maintain that they have responded to the best of their ability.  And defendants argue that they need only respond to Int. No. 2 from the time during which Normand took office, from 2007 through the present.

Williams argues that defendant fail to explain why Thurman's personnel file is not discoverable.

Williams also notes that he alleges that Thurman concealed the Noon Statement from the JPDA.  It is thus a contested matter.  Williams also notes that he alleges no Fourth Amendment claim, but a claim that Thurman violated his Fifth, Sixth and Fourteenth Amendment rights by manufacturing evidence against him, including by coercing statements from Landry.  He contends that other instances of misconduct – especially by Thurman – are relevant to proving that the JPSO

acted deliberately indifferent to his constitutional rights.

Williams also maintains that defendants fail to specifically identify why the requests are unduly burdensome. Williams notes that the only incidents of misconduct that he has uncovered are through Westlaw, and he has no access to other complaints, reports, evaluations or internal investigations.

Williams contends that prior instances of misconduct by Thurman are discoverable even if they are later ruled inadmissible at trial. The request need only be reasonably calculated to lead to the discovery of admissible evidence. Williams maintains the defendants' argument that the discovery will be inadmissible at trial as to Thurman is irrelevant because it bears on his *Monell* claim.

The Court finds that Williams' discovery requests are reasonably calculated to lead to the discovery of admissible evidence. Having reviewed the objected-to requests, the Court finds that they are narrowly-tailored to lead to the discovery of admissible evidence as to Williams' *Monell* claim. The Court thus orders Normand and Thurman to respond to the discovery requests with the following caveats:

(1)     The Court temporally limits the discovery requests to ten (10) years from the murder of Michelle Gallagher. This renders any unduly-burdensome objection moot.

(2)     With regard to the personnel files of Thurman, Dohre and Jordan, the Court orders them produced but also orders defendants to redact them of all personal and financial information before production. The Court has reviewed *in camera* the personnel files of Jordan and Dohre and finds that they are discoverable after redaction.

The Court also finds that Williams is correct here with regard to the discoverability of

subsequent or contemporaneous conduct. Despite *Connick*, district courts continue to hold that "[s]ubsequent or contemporaneous conduct can be circumstantial evidence of the existence of preceding municipal policy or custom." *Chepilko v. City of New York*, No. 06-CV-5491, 2012 WL 398700, *15 (E.D.N.Y. Feb. 6, 2012) (and cases cited therein). Discovery is thus not limited to acts that occurred only before the incident in question. The Court also notes that Williams is also correct as to defendant's argument related to admissibility. Admissibility is entirely different from discoverability. Whether evidence is admissible at trial does not control whether it is discoverable, as long as it is reasonably calculated to lead to the discovery of admissible evidence. These arguments are without merit.

In the re-filed pleadings, the parties also address the applicability of *Frankenhauser v. Risso*, 59 F.R.D. 339 (E.D. Pa. 1973), *overruled on other grounds as recognized in Startzell v. City of Philadelphia*, Civ. A. No. 05-5287, 2006 WL 2945226, *4 (E.D. Pa. Oct. 13, 2006), to RFP No. 14, which seeks all documents relating to any complaints, reviewed, investigations, reports or lawsuits involving Thurman, including but not limited to all documents relating to his role in the investigations of the murders of Samuel George, Vernon Michel, and Danielle Nigro. In *Frankenhauser*, the court held:

> In the context of discovery of police investigation files in a civil rights case, however, at least the following considerations should be examined: (1) the extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information; (2) the impact upon persons who have given information of having their identities disclosed; (3) the degree to which governmental self-evaluation and consequent program improvement will be chilled by disclosure; (4) whether the information sought is factual data or evaluative summary; (5) whether the party seeking the discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question; (6) whether the police investigation has been completed; (7) whether any intradepartmental disciplinary proceedings have arisen or may arise from the investigation; (8) whether the plaintiff's suit is non-frivolous

and brought in good faith; (9) whether the information sought is available through other discovery or from other sources; and (10) the importance of the information sought to the plaintiff's case.

*Id.* at 344.  However, the law enforcement privilege does not bar discovery once investigation and prosecution are complete. *Startzell v. City of Philadelphia*, Civ. A. No. 05-5287, 2006 WL 2945226, *4 (E.D. Pa. Oct. 13, 2006).  If the parish is no longer pursuing the criminal case against the parties implicated by the discovery request, the three-fold purpose of the privilege is not implicated.

With regard to all of the other individual requests, if defendants contend that they have responded with all that they have, the Court reminds them of their duty to supplement under the rules.  If defendants have no documents responsive to a specific request because of the time period, they may simply state so formally and in writing.

## III.   Conclusion

For the foregoing reasons,

**IT IS ORDERED** that Plaintiff's Motion to Compel Discovery from Defendant Paul Connick, Jr. and for Fees and Costs [Doc. #111] and Plaintiff's Re-Filed Motion to Compel Discovery from Defendants Grey Thurman and Newell Normand.  [Doc. #125] are GRANTED as outlined above.  Due to the sensitive nature of many of the documents that will be produced here and that they may address non-parties to this litigation, the Court also orders that all documents produced in response to these discovery requests be confined in their use to this litigation.  Should either party wish to use any document produced in compliance with this Order outside of this litigation, said party may move the Court to do so.  Given the hotly contested issues here, the Court denies all requests for fees and costs at this time.

New Orleans, Louisiana, this 25th day of March, 2014.

**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**