**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| MICHAEL WILLIAMS | CIVIL ACTION |
| VERSUS | NO. 12-1274 |
| DISTRICT ATTORNEY PAUL CONNICK, ET AL. | SECTION "F" (3) |

**ORDER**

On June 4, 2014, the Motion to Quash Subpoena Issued to the Louisiana Office of Disciplinary Counsel [Doc. #144], the Motion to Quash Subpoena Issued to the Louisiana Attorney Disciplinary Board [Doc. #146], and the Motion Filed on Behalf of District Attorney Paul D. Connick, Jr. in Support of Motion to Quash or Modify Subpoena Duces Tecum; Alternatively, for Protective Relief [Doc. #148] came on for oral hearing before the undersigned.  Present were William Rittenburg and Laura Brookover on behalf of plaintiff Michael Williams, James Mulally, Joseph LoPinto, Glenn Adams and Leandro Area on behalf of various defendants, and Richard Stanley and William Ross on behalf of movants.  After the oral hearing, the Court took the motions under advisement.  Having reviewed the motions, the oppositions and the case law, the Court rules as follows.

**I.      Background**

The District Court has extensively outlined the underlying factual circumstances of this lawsuit, and this Court need not do so again.  *Williams v. Connick*, Civ. A. No. 12-1274, 2014 WL

172520 (E.D. La. Jan. 15, 2014).

II.     **The Parties' Contentions**

      A.     **The Motions to Quash**

On May 1, 2014, Williams issued subpoenas duces tecum on the Louisiana Office of Disciplinary Counsel ("ODC") and the Louisiana Attorney Disciplinary Board ("LADB") (collectively, "movants") in which he seeks all documents related to 18 former and current Louisiana state attorneys.

Highlighting the Louisiana Constitution and the creation of the ODC and the LADB, the ODC first outlines the nature of confidential lawyer disciplinary proceedings. The ODC notes that Louisiana Supreme Court Rule XIX requires that all complaints and documents remain confidential *unless* formal charges are filed against an attorney. If a formal charge is filed, all documents then become public.

The ODC first seeks to quash the subpoena on the ground that it requires production in Washington, D.C., more than 100 miles from where it resides and regularly transacts business. This alone, the ODC argues, requires the quashing of the subpoena under Rule 45(c)(2)(A).

The ODC also asks the Court to quash the subpoena on the ground that it is overbroad and seeks confidential documents. Citing case law from other states with similar rules, the ODC notes that courts do not compel disciplinary boards to produce documents that are confidential and have not led to formal charges against an attorney.

The ODC further argues that any non-confidential documents (*i.e.*, those that led to a formal charge) are readily available to Williams on-line, and it should thus not bear the burden and expense of producing them.

Lastly, the ODC seeks its attorneys' fees and costs incurred in filing the motion. It maintains that the case law is so clear and strongly in its favor that Williams should never have propounded the subpoena in the first instance.

The LADB filed a near-identical motion to that filed by the ODC. Defendant Paul Connick also filed a motion in support of the motions to quash in which he raised several new arguments. Connick first argues that he has standing to seek to quash the subpoenas on the ground that he has a personal interest in the subject matter. He maintains that he has an interest in protecting his current and former employees from annoyance and harassment.

Connick contends that the subpoenas exceed the temporal scope outlined in this Court's May 25, 2014 Order, in which it limited discovery to five years before and five years after the incident.

### B.    Williams' Combined Opposition

Williams first notes that none of the parties attempted to confer with him before filing the motions to quash. Williams has agreed to the following modifications, but movants refused to withdraw their objections: (1) Williams will designate a place for production within 100 miles of the ODC and the LADB; (2) Williams agrees to limit the subpoena temporally in compliance with this Court's May 25, 2014 Order; (3) Williams agrees to seek documents related only to those complaints that arose from the attorneys' employment with the JPDA or another DA's office; and (4) Williams will consent to the entry of a protective order.

Williams contends that the subpoenas seek information relevant to whether the Jefferson Parish District Attorney's Office engaged in a pattern or practice of *Brady* violations and is critical to his *Monell* claim.

Williams also argues that no privilege applies here. He maintains that federal law, not state

law, governs privilege in this lawsuit, and thus Louisiana Supreme Court Rule XIX is inapplicable. Citing Fifth Circuit case law, Williams contends that courts reject the application of state-privilege laws in Section 1983 lawsuits: "Because the civil rights laws are in part designed to protect individuals against illegal state action, it would be anomalous to permit state law privileges to interfere with their enforcement." *Burka v. N.Y.C. Transit Auth.*, 110 F.R.D. 660, 666 (S.D.N.Y. 1986).

Williams argues that even were Rule XIX applicable, the Louisiana Supreme Court has rejected the ODC's arguments before it and held the confidentiality provisions unconstitutional. He thus notes that proceedings that do not lead to a formal charge are not confidential and may be disclosed by numerous individuals. He maintains that confidentiality laws and privileges are not one and the same.

Williams further contends that the subpoenas do not impose an undue burden on the ODC or the LADB. He maintains that the appropriate remedy is a protective order and redaction.

Williams notes that he does not have access to all of the materials on-line as many of the documents, subject to Rule XIX under state law, are not publicly available. He maintains that it would be far easier for the ODC to simply produce publicly-available documents with all other documents. He argues that movants have failed to demonstrate the "heavy burden" necessary to avoid compliance.

Williams further argues that deposing the individuals would be fruitless. He notes that even the ODC and the LADB recognize that some charges are not even known to the attorney himself.

Lastly, he contends that there is no basis to award movants their attorneys' fees and costs.

**C.**     **The ODC's and the LADB's Reply**

Movants contend that Rule XIX prohibits them from complying with the subpoenas. They note that the Supreme Court has held that state and local governments may deny access to information in their possession that is non-public. Citing two Supreme Court cases, movants contend that there is nothing unusual about a state agency restricting access to confidential information in its possession.

Movants argue that a federal court must give full faith and credit to the actions of the states and are constrained from upsetting protective orders entered by a state court. Movants maintain that this Court need not even reach this issue because Rule 45 allows it to quash a subpoena that seeks "other protected matter."

Movants contend that the Louisiana Supreme Court's *Warner* opinion on which Williams relies is inapposite. *In re Warner*, 21 So. 3d 218 (La. 2009). There, the court held that Rule XIX was unconstitutional as applied to participants who divulged information from a disciplinary proceeding instituted against them before formal charges had been filed. Here, movants maintain that the issue is different in that Williams does not have the information that he seeks, does not seek to divulge the information, and he seeks only to compel its disclosure.

### D.    Connick's Reply

Connick extensively addresses Williams' reliance on the Fifth Circuit's *ACLU* opinion. *ACLU of Miss., Inc. v. Finch*, 638 F.2d 1336 (5th Cir. 1981). There, Connick argues, the Mississippi legislature had passed a law that sealed a government commission's records 20 years after it had created the commission. The Fifth Circuit relied heavily on the passage of the 20 years to find that the government had not considered it necessary to seal the records until then and had thus not relied on the confidentiality of the records. Here, Connick notes, Rule XIX's confidentiality

provision went into effect with the passage of Rule XIX, and the Louisiana government has thus

relied on the confidentiality of the records since the passage of the rule.

## III.    Law and Analysis

For the following reasons, the Court grants the motions as the subpoenas are currently

worded but reserves Williams' right to modify them and re-propound them.  Williams shall modify

them (1) to designate a place for production within 100 miles of the ODC and the LADB; (2) to limit

the subpoena temporally in compliance with this Court's May 25, 2014 Order; and (3) to seek only

public – and not any confidential –  documents for the reasons outlined below.

To establish liability under *Monell*, Williams must prove that Connick (*i.e.*, the municipality)

was deliberately indifferent to Williams' constitutional rights.  *Monell v. Dep't of Soc. Servs. of City

of N.Y.*, 436 U.S. 658 (1978).  The Fifth Circuit has noted:

> "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a
> municipal actor disregarded a known or obvious consequence of his action."   "For
> an official to act with deliberate indifference, the official must both be aware of facts
> from which the inference could be drawn that a substantial risk of serious harm
> exists, and he must also draw the inference." Deliberate indifference requires a
> showing of more than negligence or even gross negligence.  "Actions and decisions
> by officials that are merely inept, erroneous, ineffective, or negligent do not amount
> to deliberate indifference and do not divest officials of qualified immunity."   "To
> satisfy the deliberate indifference prong, a plaintiff usually must demonstrate a
> pattern of violations and that the inadequacy of the training is 'obvious and
> obviously likely to result in a constitutional violation.'"  "[I]t may happen that in
> light of  the duties assigned to specific officers or employees the need for more or
> different training is so obvious, and the inadequacy so likely to result in the violation
> of constitutional rights," a supervisor might reasonably be found to be deliberately
> indifferent.

*Estate of Davis ex rel. McCully v. City of North Richland Hills*, 406 F.3d 375, 381-82 (5th Cir. 2005)

(citations omitted).

And recently, the Supreme Court has clarified:

6

A pattern of similar constitutional violations by untrained employees is "ordinarily necessary" to demonstrate deliberate indifference for purposes of failure to train. *Bryan Cty.*, 520 U.S., at 409, 117 S. Ct. 1382. Policymakers' "continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action – the 'deliberate indifference' – necessary to trigger municipal liability." *Id.*, at 407, 117 S.Ct. 1382. ***Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights.***

Although Thompson does not contend that he proved a pattern of similar *Brady* violations, 553 F.3d, at 851, *vacated*, 578 F.3d 293 (en banc), he points out that, during the ten years preceding his armed robbery trial, Louisiana courts had overturned four convictions because of *Brady* violations by prosecutors in Connick's office. Those four reversals could not have put Connick on notice that the office's *Brady* training was inadequate with respect to the sort of *Brady* violation at issue here. None of those cases involved failure to disclose blood evidence, a crime lab report, or physical or scientific evidence of any kind. Because those incidents are not similar to the violation at issue here, they could not have put Connick on notice that specific training was necessary to avoid this constitutional violation.

*Connick v. Thompson*, – U.S. –, 131 S. Ct. 1350, 1360 (2011) (footnotes omitted) (emphasis added).

The question before the Court thus becomes one of relevance and whether documents from a confidential lawyer disciplinary proceeding are reasonably calculated to lead to the discovery of admissible evidence.  The Court can only question: How can a confidential lawyer disciplinary proceeding have put Connick on notice of the alleged *Brady* violations?  If four public and open reversals of convictions in *Thompson* were not enough to put Connick on notice, then surely a confidential proceeding about which he knew nothing would not be sufficient to put him on notice. These documents are thus irrelevant to the *Monell* claim.

The Court also finds that movants have failed to demonstrate how any request for public records is unduly burdensome.  All movants must do is turn over the files with the public records in them.  Movants shall thus respond to the subpoenas as modified by Williams per the Court's instructions above.

The Court denies any request for attorneys' fees.

## IV.    Conclusion

For the foregoing reasons,

**IT IS ORDERED** that the Motion to Quash Subpoena Issued to the Louisiana Office of Disciplinary Counsel [Doc. #144], the Motion to Quash Subpoena Issued to the Louisiana Attorney Disciplinary Board [Doc. #146], and the Motion Filed on Behalf of District Attorney Paul D. Connick, Jr. in Support of Motion to Quash or Modify Subpoena Duces Tecum; Alternatively, for Protective Relief [Doc. #148] are GRANTED IN PART as outlined above.

New Orleans, Louisiana, this 25th day of June, 2014.

**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**