UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| MICHAEL WILLIAMS | * | CIVIL ACTION |
| | * | |
| Plaintiff, | * | CASE NO. 12-1274 |
| | * | |
| VERSUS | * | SECTION:  "F" |
| | * | JUDGE MARTIN L.C. FELDMAN |
| DISTRICT ATTORNEY PAUL CONNICK, | * | |
| ET AL. | * | MAG. DIV. (3) |
| | * | JUDGE DANIEL E. KNOWLES, III |
| Defendants. | * | |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

**COMBINED OPPOSITION OF
THE LOUISIANA ATTORNEY DISCIPLINARY BOARD
AND LOUISIANA OFFICE OF DISCIPLINARY COUNSEL
TO PLAINTIFF'S MOTION TO SET ASIDE MAGISTRATE JUDGE KNOWLES'
ORDER GRANTING IN PART MOTIONS TO QUASH PLAINTIFF'S SUBPOENAS**

The Respondents, the Louisiana Attorney Disciplinary Board (the "LADB") and the

Louisiana Office of Disciplinary Counsel (the "ODC"), through their undersigned counsel,

respectfully submit this combined opposition to the motion of the Plaintiff, Michael Williams, to

set aside Magistrate Judge Knowles' June 25, 2014 Order (the "Order") (Rec. Doc. 164).[1]  The

Plaintiff's motion is unpersuasive, addresses fewer than half of the issues presented by his

improper subpoenas to the LADB and ODC (non-parties to this action), cites no instance where a

subpoena has been enforced under analogous circumstances, and generally does nothing to show

that Magistrate Judge Knowles "misinterpreted" or "misapplied" the law in any respect.  In truth,

and as discussed below, the Order partially quashing the subpoenas is supported not only by

basic relevance standards in discovery, but additionally by Louisiana law governing the

---

[1] The Plaintiff's motion is Rec. Doc. 165.

confidentiality of lawyer-disciplinary proceedings, federal case law that is directly on-point, and the Rules for Lawyer Disciplinary Enforcement adopted by this very Court.

## I.  <u>Introduction</u>

The Plaintiff seeks an order compelling the LADB and ODC to violate Louisiana law. These agencies jointly administer the Louisiana lawyer-disciplinary system, including the investigation and handling of complaints that are confidential by rule of the Louisiana Supreme Court (the "LASC"), which is the final arbiter of state disciplinary matters.  To try to support his *Monell* claims, the Plaintiff purported to subpoena directly from these agencies the public *and confidential* disciplinary records of well over a dozen current and former Louisiana lawyers and one Louisiana state-court judge.  In response to motions to quash filed by the LADB and ODC, Magistrate Judge Knowles ruled that any responsive documents that are public could be subpoenaed, but that no confidential documents would be produced by these agencies.

That ruling is correct for at least three reasons:

- *First*, considering the nature of the Plaintiff's underlying claims, Magistrate Judge Knowles appropriately determined that confidential documents (unknown perhaps to even the respondent lawyer) are not relevant to whether the lawyer's employer was on notice of a pattern of actual *Brady* violations.  The fact that the Plaintiff, after the hearing below, "revised" the subpoenas to cover complaints filed *more than a decade* after the time period at issue only further illustrates the irrelevance of his requests.

- *Second,* the Plaintiff admits that the sought-after documents are confidential pursuant to the LASC's rule and that the LADB and ODC are bound by the rule; and, Magistrate Judge Knowles' ruling is consistent with federal jurisprudence holding that compelling a state disciplinary agency to violate confidentiality imposes an undue burden under Fed. R. Civ. P. 45.

- *Third*, the Plaintiff's main argument below, *i.e.*, that the documents must be produced unless they are dually covered by a provision of federal "privilege," has no merit.  And even if it did, such a provision exists, as this Court's lawyer-disciplinary rules contain a

2

policy setting forth confidentiality protections that are even broader than the state rule that applies to the LADB and ODC.

The Plaintiff's motion to set aside Magistrate Judge Knowles' Order should be denied.

## II.     Factual Background

### A.     The Plaintiff admits that the LADB and ODC are bound to follow Rule XIX, which the LASC enacted pursuant to its "plenary" power to regulate the practice of law in Louisiana.

This matter directly implicates LASC Rule XIX, which prescribes a comprehensive procedural and substantive framework for the administration, investigation, prosecution, and adjudication of complaints and formal charges in the Louisiana lawyer-disciplinary system. The LADB owes its existence to the Rule: "There is hereby established one permanent statewide agency to administer the lawyer discipline and disability system." La. S. Ct. R. XIX, § 2(A). In turn, Rule XIX authorizes the LADB to appoint "[d]isciplinary counsel," who "shall perform all prosecutorial functions." *Id.* at § 4(B). The ODC was created pursuant to this provision. Thus, through Rule XIX, the LASC has established the agency that administers the disciplinary system and the office that investigates complaints and prosecutes formal charges of misconduct within the system.

The LASC additionally included in Rule XIX strict and straightforward rules of confidentiality that govern every lawyer-disciplinary matter in the State of Louisiana and which the LADB and ODC must follow. In short, *all* aspects of disciplinary matters – including their mere pendency – are confidential unless and until formal charges are filed against the lawyer. *Id.* at § 16(A) ("Prior to the filing and service of formal charges in a disciplinary matter, the proceeding is confidential…"). Therefore, if a complaint is "screened out" for failure to state allegations that would constitute a violation if proven true, dismissed after investigation (with or without notification to the lawyer), or resolved through private means, the complaint and the

3

documents associated with it do not become public, and the LADB and ODC are prohibited from disclosing that a complaint ever was filed.[2]   The Plaintiff concedes that this is how § 16(A) reads and functions: "It requires that ODC and LADB maintain the confidentiality of certain disciplinary proceedings…"   Memorandum in Support of Plaintiff's Motion to Set Aside Magistrate Judge Knowles' Order Granting in Part Motions to Quash Plaintiff's Subpoenas (Rec. Doc. 165-1) ("Plaintiff's Memorandum") at p. 8.

Rather than claim that § 16(A) somehow has been mis-interpreted, the Plaintiff instead implies that Rule XIX should not be respected here because it is "*not* a legislative enactment". *Id.* at p. 8 (emphasis in original).   The emphasis on legislative action, however, reflects a fundamental misunderstanding of the separation of powers between the branches of Louisiana state government, as opposed to any impediment to enforcement of Rule XIX.   Since 1898, the Louisiana Constitutions have vested exclusive, original jurisdiction over the lawyer-disciplinary system in the LASC, not the Legislature.[3]   Repeatedly over the years, the LASC has described the broad scope of its authority in this area and explained that, while legislative acts that further that authority may be judicially ratified, those that interfere with it will be struck down:

> This court has exclusive and plenary power to define and regulate
> all facets of the practice of law, including the admission of

---

[2] On the other hand, if formal charges are pursued, the record of the proceeding and the disposition of the matter become public.   However, and notwithstanding that the filing of formal charges transforms the matter from confidential to public, the "deliberations" of the LADB (which serves as an intermediate adjudicator reviewing hearing committee findings and making recommendations to the LASC) remain confidential indefinitely.   *Id.* at § 16(B)(1) ("Upon filing and service of formal charges in a disciplinary matter, or filing of a petition for reinstatement, the proceeding is public, except for: (1) deliberations of the hearing committee, *board*, or court…") (emphasis supplied).

[3] *See* La. Const. art. V, § 5(B); *see also Singer Hunter Levine Seeman & Stuart v. Louisiana State Bar Ass'n*, 378 So. 2d 423, 426 (La. 1979) ("This court's inherent authority over the practice of law has been protected by the constitutional separation of powers in every constitution that this state has had, except that of 1868.   This court has had original jurisdiction over disbarment cases since the Constitution of 1898.").

attorneys to the bar, the professional responsibility and conduct of lawyers, the discipline, suspension and disbarment of lawyers, and the client-attorney relationship …. The standards governing the conduct of attorneys by rules of this court unquestionably have the force and effect of substantive law.

Conversely, the legislature cannot enact laws defining or regulating the practice of law in any aspect without this court's approval or acquiescence because that power properly belongs to this court and is reserved for it by the constitutional separation of powers.  La. Const. 1974, Art. II.  Accordingly, a legislative act purporting to regulate the practice of law has commendatory effect only until it is approved by this court as a provision in aid of its inherent judicial power.  This court will ratify legislative acts that are useful or necessary to the exercise of its inherent judicial power, but it will strike down statutes which tend to impede or frustrate its authority.

*Succession of Wallace*, 574 So. 2d 348, 350 (La. 1991) (citations omitted).  *The LASC went on to identify Rule XIX as one of "the wide range of rules" that it has adopted pursuant to its plenary, constitutional responsibility to regulate the practice of law in the Louisiana state system.  Id.* at 350 n.1 (emphasis provided).

Accordingly, it indeed is "important[]" that the LASC (and not the Louisiana Legislature) enacted Rule XIX, but not for the reason suggested by the Plaintiff.  Plaintiff's Memorandum at p. 8.  Far from dictating that it is inferior to a garden-variety statute, passage of Rule XIX by the LASC confirms that the confidentiality provisions at issue have been validly adopted by the one branch of Louisiana government with the constitutional power to do so and that the provisions "unquestionably have the force and effect of substantive law."  *Succession of Wallace*, 574 So. 2d at 350.

**B.**     **The Plaintiff also admits that the LADB and ODC would have to violate Rule XIX in order to comply with the subpoenas.**

On or about May 1, 2014, the Plaintiff served on the LADB and ODC the subpoenas that are the subject of this third-party discovery dispute.  Functionally-identical and facially non-

5

compliant with Fed. R. Civ. P. 45, the subpoenas were aimed at eighteen (18) current or former Louisiana lawyers who presumably used to be affiliated with the Jefferson Parish District Attorney's Office (the "JPDA"), including a sitting Louisiana appellate court judge: (1) Ken Dohre, (2) Roger W. Jordan, Jr., (3) Marion Edwards, (4) Fredericka Homberg Wicker, (5) Terry Boudreaux, (6) Ronald Bodenheimer, (7) Philip Boudousque, (8) Jack Capella, (9) Mary Glass, (10) Ronald Gracianette, (11) Gregory Kennedy, (12) Robert Long, (13) James Maxwell, (14) Carey Morgan, (15) Vincent Paciera, (16) Dorothy Pendergast, (17) Jim Williams, and (18) Guy DeLaup.  Exhs. "A" and "B," April 29, 2014 subpoenas issued to the LADB and ODC.  As originally drafted,[4] the subpoenas called for the disclosure of the following documents for each of these individuals:

> All complaints against [the individual] and all documents relating to such complaints, including but not limited to responses to complaints; documents obtained or created during the process of investigating the complaints; memoranda, reports, and other assessments concerning the complaints; and documents reflecting the disposition of complaints and the reasons for those dispositions.

*Id.*

These subpoenas thus concerned two categories of documents: (1) public documents relating to formal charges resulting from complaints and (2) documents confidential under Rule XIX, including those regarding complaints against the respondent-lawyer that did not result in formal charges and for which the respondent-lawyer has not waived confidentiality,[5] disciplinary investigations that perhaps are unknown to the respondent-lawyer, and the deliberations of the LADB in matters that have been formally charged.  Just as he concedes that Rule XIX requires

---

[4] As will be seen, the Plaintiff purported to change the temporal scope of the subpoenas twice – once before the hearing on the motions to quash and again after the hearing.

[5] Rule XIX affords for the possibility that a respondent-lawyer may waive his or her right to confidentiality.  Rule XIX, § 16(A)(1).

the LADB and ODC to maintain confidentiality, the Plaintiff also admits that documents falling into the latter category in fact are confidential under Rule XIX: "Most of the responsive documents would be confidential under Rule XIX."  Plaintiff's Memorandum at p. 7.  There is no doubt, therefore, that the Plaintiff sought from Magistrate Judge Knowles (and now seeks from this Court) an order compelling the LADB and ODC to violate Louisiana state law.

### C.   The Plaintiff next insisted on pursuing production of confidential documents that no longer exist.

Following service of the LADB's and ODC's Rule 45 objections letters and motions to quash the subpoenas, Plaintiff's counsel proposed to narrow the subpoenas "to the limitations on the scope … reflected on the Rule 26(c) Certification accompanying the JPDA's motion to quash."  Exh. "C," Letter from Benjamin S. Haley to William M. Ross dated May 23, 2014.[6] Although it did not resolve their objections to the subpoenas, counsel for the LADB and ODC replied in writing and confirmed their understanding of the Plaintiff's proposal: "…we understand that that the plaintiff is willing to limit the subpoenas served on the LADB and ODC to complaints filed against the subject lawyers from March 6, 1991 through March 6, 2001." Exh. "D," Letter from William M. Ross to Benjamin S. Haley dated May 30, 2014.  Further, as a courtesy and with the thought that it may cause the Plaintiff to reconsider whether it would be worthwhile to continue this endeavor, the Plaintiff also was informed that, due to document-retention policies (including one contained in Rule XIX itself), only documents from one public matter remain in existence for that long-expired ten-year period:

---

[6] Mr. Haley's letter referred to the following statement in the JPDA's Rule 26(c) Certification: "…during the conference the Plaintiff agreed to limit his subpoenas duces tecum by the temporal limitation imposed by the Court in its March 25, 2014 Order (Rec. Doc. 139); to wit, 'the ten-year period surrounding the incident alleged here, from five years before the incident to five years after it.'"  Rec. Doc. No. 148-2.

> To the extent that any complaints were filed against any of the lawyers named in the subpoenas during the time frame covering 1991 through 2001, all of the documents pertaining to such matters would have long ago been expunged (destroyed) pursuant to the rules of the Supreme Court.   Due to these expungement procedures, documents responsive to the subpoenas (as temporally limited) still exist only for one matter that involved Roger W. Jordan, Jr.   In that matter, Mr. Jordan was formally charged, and, the Louisiana Supreme Court's Order and Opinion disciplining him can be found at 913 So. 2d 775 (La. 2005).   You should be able to locate the entire record including transcripts and exhibits through the Clerk of Court for the Louisiana Supreme Court.

> Thus, even if our objections are set aside (and they should not be), our clients are in possession of few documents (Jordan) for the narrowed time period at issue.   We wish to provide this information to you, in case it impacts how your client may choose to proceed with the subpoenas and pending motions to quash.

*Id.*

The Plaintiff insisted on proceeding with the hearing before Magistrate Judge Knowles, but never advised counsel for the LADB and ODC – whether orally or in writing – that they had perhaps misconstrued the new time limitations proposed for the subpoenas.  At least at that time, the LADB and ODC were at a loss to understand why the Plaintiff would persist in seeking the production of documents that do not exist.

> **D.    Under the Order, the Plaintiffs are entitled to subpoena from the LADB and ODC all public documents for the relevant period.**

An explanation began to emerge at the hearing before Magistrate Judge Knowles. Toward the end of the argument, Plaintiff's counsel suggested that the LADB and ODC had not been forthright about the documents that are available for production:

> And then, separately, counsel has said that the only documents they have that would be responsive are these Roger Jordan files. We actually know that there's responsive documents because IPNO filed a complaint against Dohre in the past couple months about these issues.  So we know that they have documents that

> would be documents responsive to the issues and those weren't
> mentioned in the letter.

Transcript of June 4, 2014 Hearing (Rec. Doc. 165-3) (the "Transcript") at p. 9.[7]  In response,

counsel for the LADB and ODC noted that a complaint filed in 2014 would be outside of the

previously-ordered time limitations relevant to the Plaintiff's *Monell* claims, and Magistrate

Judge Knowles agreed:

> MR. STANLEY: Well, a complaint filed within the last few
> months would not have been destroyed because that's outside of
> the five year parameter set by the Court.
>
> THE COURT: Right.

*Id.*  Shortly following this exchange, Magistrate Judge Knowles took the matter under

advisement.

On June 25, 2014, the Order issued, supported by written reasons.  By that Order,

Magistrate Judge Knowles granted the motions to quash only in part and reserved the right to the

Plaintiff to re-issue subpoenas to the LABD and ODC modified to: (1) designate a place of

compliance proper under Fed. R. Civ. P. 45; (2) conform to the temporal limitations ordered in

this case in March 2014 [*i.e.*, lawyer-disciplinary complaints filed between March 1991 through

March 2001]; and (3) seek "only public – and not confidential – documents."  Order at p. 6.

**E.  The Plaintiff has brought to this Court new subpoenas that have not been
served, are not the subject of the Order, and continue to violate the
previously-ordered time limitations.**

Although he complains about having to conduct depositions without documents from the

LADB and ODC, the Plaintiff for some reason has chosen *not* to serve modified subpoeas, as

---

[7] The Transcript is attached as Exh. "B" to the Plaintiff's Memorandum.

9

instructed by the Order.[8]  Instead, the Plaintiff re-drafted the subpoenas to cover complaints *filed through present day* regarding supposed conduct "within the period beginning five years before and ending five years after the Alleged Incident."  Plaintiff's Memorandum at Exh. "A."

There are at least three problems with these new subpoenas.  *First*, they have not been served on either the LADB or the ODC.  *Second*, they obviously are not the same subpoenas analyzed in the Order that the Plaintiff is asking this Court to set aside.  *Third*, the Plaintiff represents that the "[r]evised" subpoenas meet the modifications ordered by Magistrate Judge Knowles, but the exchange from the hearing quoted above belies that he knows (or should know) that the statement is untrue.  Plaintiff's Memorandum at p. 2.  In fact, the new subpoenas would reach complaints filed and documents created *13 years or longer <u>after</u> expiration of the 10-year discovery period ordered in this case*.

## III.   Law and Argument

### A.   The standard of review favors upholding the Order.

As noted at the beginning of this memorandum, the Plaintiff faces a substantial burden in setting aside the Order.  This is so because "[a] magistrate judge is afforded broad discretion in the resolution of non-dispositive pretrial matters" like the one at issue here.  *See Aetna Life Ins. Co. v. DFR Sleep Diagnostics Ctr.*, No. 02-1335, 2004 WL 465229 (E.D. La. Mar. 9, 2004) (citations omitted).  As a result, the scope of a district court's review of such a decision by a magistrate judge is "narrow."  *Kovesdi v. Allstate Indem. Co.*, No. 10-697, 2010 WL 4553504 at *2 (E.D. La. Nov. 2, 2010).  More specifically, applying the Fed. R. Civ. P. 72(a) standard, "[a]

---

[8] Of course, in those same depositions, the Plaintiff could simply ask the individuals listed in the subpoenas about their disciplinary history and move to compel answers if those persons object on confidentiality grounds.  That approach would be preferable to trying to force disclosure of information from state agencies which are required by law not to release it.

district court may only reverse a magistrate judge's ruling where it finds the ruling to be 'clearly erroneous or contrary to law.'" *Aetna Life*, 2004 WL 465229 at *2.

Under the "clearly erroneous" prong of the test, a magistrate judge's order "should not be rejected merely because the court would have decided the matter differently." *Ordemann v. Unidentified Party*, No. 06-4796, 2008 WL 695253 at *1 (E.D. La. Mar. 12, 2008) (citations omitted). To the contrary, the standard has been referred to as "highly deferential" and "difficult … to satisfy" because it "requires the court to affirm the decision of the magistrate judge unless on the entire evidence the court is left with a definite and firm conviction that a mistake has been committed." *Aetna Life*, 2004 WL 465229 at *2; *Benoit v. Nintendo of Am., Inc.*, No. 01-674, 2001 WL 1524510 at *1 (E.D. La. Nov. 28, 2001); *Wilcox v. Warden Louisiana Corr. Inst. For Women*, No. 12-2471, 2013 WL 74354 at *1 (E.D. La. Jan 7, 2013); *Ordemann*, 2008 WL 695253 at *1.

"Similarly, a magistrate judge's order is 'contrary to law' only if it fails to apply or misapplies relevant statutes, case law, or rules of procedure." *Id.* The standard is so forgiving that district courts have upheld the orders of magistrate judges even when the orders are silent as to the reasoning supporting them. *See, e.g., Young v. State Farm Fire & Cas. Co.*, No. 06-9871, 2007 WL 2127871 (E.D. La. July 15, 2007). Finally, a motion to review the order of a magistrate judge is appropriately granted only when the "magistrate judge has obviously misapprehended a party's position, the facts, or the applicable law, or when the party produces new evidence that could not have been obtained through the exercise of due diligence." *Hunter v. Copeland*, No. 03-2584, 2004 WL 1562832 at *1 (E.D. La. July 12, 2004).

The Plaintiff has not and cannot meet these high standards for setting aside the Order in this case. As far as the law is concerned, in his memorandum, the Plaintiff merely cherry-picks

11

case passages on general principles of relevance that he believes favor his position.  But, he cites no truly on-point authority holding that similar confidential information possessed by a third-party state agency is relevant and discoverable. Certainly, therefore, the Plaintiff has not come close to proving that Magistrate Judge Knowles mis-applied or acted contrary to law in any way, much less imparted a "definite and firm conviction" that such a mistake was made.  Additionally, the Plaintiff says nothing of consequence regarding the other, independent bases for affirming the Order that do not depend on any findings concerning the purported "relevance" of the confidential information sought by the subpoenas.  Each of these points is addressed in detail below.

> **B.    Judge Knowles correctly concluded that confidential disciplinary information is not relevant to the Plaintiff's claims, and the "revised" subpoenas are even further removed from the issues presented by this case.**

Initially, the Plaintiff is wrong to suggest that Magistrate Judge Knowles questioned the relevance of the confidential information sought by the subpoenas "*sua sponte*."  Plaintiff's Memorandum at p. 3.   In his pre-hearing memorandum, the JPDA expressly argued that confidential disciplinary information is not "relevant" to the "plaintiff's alleged claim that the District Attorney allegedly had an official policy at the time of Mr. Williams' trial in 1997 of deliberately violating certain *Brady* rights of criminal defendants…"  Memorandum Filed on Behalf of District Attorney Paul D. Connick, Jr. in Support of Motion to Quash or Modify Subpoenas Duces Tecum; Alternatively, for Protective Relief (Rec. Doc. 148-1) at p. 6. Likewise, in their reply, the LADB and ODC noted that the subpoenas were not limited to disciplinary complaints alleging "*Brady* violations."  Reply Memorandum in Support of Motions to Quash Subpoenas Issued to the Louisiana Attorney Disciplinary Board and the Louisiana Office of Disciplinary Counsel (Rec. Doc. 156) at p. 2.  Therefore, and although Magistrate

Judge Knowles better focused the issue during the argument, the Plaintiff and his counsel were on notice that the relevance of the documents requested by the subpoenas would have to be defended at the hearing – despite the contrary representation made in his memorandum to this Court.[9]

The Plaintiff is also wrong to suggest, as a legal matter, that this issue is a "sole question" inquiry. Plaintiff's Memorandum at 6. By its plain language, Fed. R. Civ. P. 26 imposes at least two steps on a party seeking the production of documents or other information. It must be shown not only that the matter sought is "reasonably calculated to lead to the discovery of admissible evidence," but additionally that the matter is "relevant." Fed. R. Civ. P. 26(b)(1). In other words, "the object of inquiry must have some evidentiary value before an order to compel disclosure of otherwise inadmissible material will issue." *Hunter*, 2004 WL 1562832 at *2. This is consistent with the United States Supreme Court's longstanding recognition that "'discovery, like all matters of procedure, has ultimate and necessary boundaries.'" *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (quoting *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)).

To see fully why Magistrate Judge Knowles was correct to conclude that compelling the LADB and ODC to disregard Rule XIX and produce confidential documents goes beyond "ultimate and necessary boundaries" in discovery, it is necessary to reiterate how the lawyer-disciplinary process works in Louisiana. If after review and investigation of a complaint the ODC forms a belief that an ethical violation has occurred and it receives permission to file formal charges, the matter immediately becomes public upon the filing of formal charges. In that instance, documents associated with the matter would be eligible for production under the

---

[9] Further, if the Plaintiff did not realize that relevance was in dispute and his counsel instead was blindsided by the issue at the hearing, then it is unclear why the first part of the argument section of his pre-hearing opposition to the motions to quash was directed at relevance. Plaintiff's Opposition to Motions to Quash (Rec. Doc. 152) at pp. 4-5.

Order – *even if the respondent-lawyer was fully exonerated on the charge*.  On the other hand, in the event the ODC determines it cannot support a violation and dismisses the complaint, the complaint remains confidential as a *mere allegation* of misconduct that was not pursued in the disciplinary system.[10]  In that instance, neither the respondent lawyer *nor his or her employer* may know that the complaint was filed.

Against this factual backdrop, Magistrate Judge Knowles began his legal analysis with reference to Supreme Court and Fifth Circuit jurisprudence holding that, to prevail on his claims in this case, the Plaintiff must prove that the JPDA "was deliberately indifferent" to his constitutional rights.  Order at pp. 6-7 (citing *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658 (1978); *Estate of Davis ex rel. McCully v. City of North Richland Hills*, 406 F. 3d 375 (5th Cir. 2005); and *Connick v. Thompson*, -- U.S. --, 131 S. Ct. 1350 (2011)).  In short, and as Magistrate Judge Knowles determined, a confidential and unknown complaint could not have put the JPDA on notice of anything and, further, could not support a finding that the office acted with deliberate indifference.

The "revised" subpoenas drafted after the hearing only make matters worse for the Plaintiff.  Once again, those subpoenas overlook the previously-ordered time limitations and demand documents regarding complaints *filed at any point through present day* with respect to alleged conduct that occurred during the "Relevant Period."  Notably, this *broadening* of the subpoenas took place only *after* the subpoenas first were *narrowed* and the Plaintiff was

---

[10] Respectfully, part of the problem throughout this third-party discovery dispute has been that the Plaintiff and his counsel apparently did not research the mechanics of the lawyer-disciplinary system prior to issuing the subpoenas and still do not understand it.  For example, at the hearing before Magistrate Judge Knowles, Plaintiff's counsel suggested that "supervisors at JPDA" may have known about confidential complaints because they "might have been called as character witnesses."  Transcript at p. 8.  That is not even theoretically possible.  If a matter does not proceed past the confidential stage, there is no hearing on formal charges at which to call witnesses of any type – fact, expert, or character.

instructed that any confidential documents that may have existed for the narrowed period would have been destroyed years ago.  Setting that aside, other than with a curious and largely-unilluminated reference to "constructive notice," the Plaintiff cannot explain how the JPDA would have been aware of an alleged *Brady* violation occurring between *1991 through 2001* based on a complaint filed over a decade later *in 2014*.  Plaintiff's Memorandum at p. 10 ("Accordingly, *Brady* violations identified in disciplinary proceedings – even if Plaintiff cannot show that JPDA policymakers were actually aware of the violations – may support constructive notice.").

For all of these reasons, Magistrate Judge Knowles was well within his discretion to determine that confidential disciplinary complaints and associated documents are not relevant to the Plaintiff's claims.  The motion to set aside the Order can and should be denied on this basis alone.

### C.   Rule XIX, case law applying a similar rule, and the lawyer-disciplinary rules of this Court further support the Order.

The LADB and ODC disagree that Magistrate Judge Knowles did not also consider the arguments rooted in Rule XIX's confidentiality provisions.  *See* Plaintiff's Memorandum at pp. 4, 13.  Those arguments were acknowledged and summarized over several pages of the Order. *See* Order at pp. 2-6.  Ironically, it is the Plaintiff who glosses over those same arguments and devotes his memorandum almost exclusively to "relevance."   Regardless, whether Magistrate Knowles based the Order in part on Rule XIX simply does not matter to this analysis.  The law is well-settled that, even if the stated basis for a magistrate judge's order is flawed, the order nonetheless should be upheld if it is supported by any alternative basis.  *Martin v. Lafon Nursing Facility of the Holy Family, Inc.*, 244 F.R.D. 352, 360 (E.D. La. 2007); *Hunter*, 2004 WL

1562832 at *6.  In this case, Rule XIX, case law, and the rules of this Court all provide such alternative bases for affirming the Order.

### 1. The LADB and ODC cannot be compelled to produce documents that are confidential under Rule XIX.

Because the LADB and ODC are non-parties who have no interest in the underlying merits of this litigation, the subpoenas were issued pursuant to Fed. R. Civ. P. 45, which prescribes rules for the service of, objections to, and quashing of subpoenas to third parties to produce documents.  Pertinent to this case, Rule 45 instructs that: (1) a party "must" not subject the person to whom the subpoena is directed to "undue burden;" and (2) the Court "must" quash a subpoena that "requires disclosure of privileged *or other protected matter*."  Fed. R. Civ. P. 45(d)(1), (d)(3)(A)(i)-(ii) (emphasis supplied).  The Plaintiff's subpoenas violate both of these sub-parts of Rule 45.

As previously mentioned, the Plaintiff appears to concede (as he must) that the LADB and ODC are bound by Rule XIX's confidentiality provisions and that the documents he is seeking through the subpoenas and this motion are covered by those provisions.  Thus, there is no avoiding that, in the event the Plaintiff prevails and the subpoenas are enforced to compel disclosure of confidential documents, the LADB and ODC would be in the position of having to choose between violating Rule XIX and violating an Order from this Court.  This highly-undesirable result can be avoided by affording to Rule XIX the full, faith, and credit that it is due in the federal system.[11]

---

[11] *See* 28 U.S.C. § 1738; *Tucker v. Ohtsu Tire & Rubber, Co., Ltd.*, 191 F.R.D. 495, 499 (D. Md. 2000) ("Courts which have been called upon to decide discovery motions that involve requests to modify or terminate a protective order previously issued by another court, whether state or federal, have frequently felt constrained by principles of comity, courtesy, and, where a federal court is asked to take such action with regard to a previously issued state court protective order, federalism.") (citations omitted).

a.    **The only on-point case supports the application of Rule XIX.**

Moreover, there is federal precedent under Rule 45 to quash a subpoena on this ground. In *Williams v. Franklin County Municipal Court*, No. 10-0115, 2012 WL 748685 at *1 (S.D. Ohio Mar. 8, 2012), an employment case, the plaintiff issued a subpoena to a lawyer with the Ohio Disciplinary Counsel "to produce documents regarding any disciplinary complaint naming, or disciplinary investigations involving," a certain judge.   On reconsideration of a ruling quashing the subpoena in response to a motion filed by disciplinary counsel, and looking to a confidentiality rule that parallels Louisiana's Rule XIX, § 16, the magistrate judge held:

> Under the unique circumstances of this case, the Court concludes that the *burden* disclosure would place on the Ohio Disciplinary Counsel strongly outweighs Plaintiff's need for the discovery in question.  Requiring the Ohio Disciplinary Counsel, a non-party in this case, to produce the documents in question *would be highly burdensome*.  The Ohio Disciplinary Counsel is obligated under the Ohio Supreme Court Rules for the Government Bar to maintain "proceedings and documents relating to review and investigation of grievances" confidential….As the Ohio Disciplinary Counsel has provided, the confidential nature of investigatory proceedings serves a variety of policy interests, including promotion of the free exchange of information and protection of accused lawyers as well as witnesses during the investigative process.  Accordingly, forcing the disclosure of document [sic] relating to any disciplinary investigation of Judge Hale would require the Ohio Disciplinary Counsel to violate confidentiality requirements central to the disciplinary investigation process.

*Id.* at *2 (emphasis provided).  The prior order quashing the subpoena accordingly was upheld.

*Williams* is the *only* on-point case that has been cited by any party to this discovery dispute, and Magistrate Judge Knowles' Order accords with it.  Yet, the case is mentioned *nowhere* in the Plaintiff's Memorandum.  With respect to honoring Rule XIX, therefore, the Plaintiff has done absolutely nothing to show that Magistrate Judge Knowles committed clear error.  Indeed, he did not.

**b.**      **The LASC has confirmed that the LADB and ODC must continue to follow Rule XIX.**

In passing, and in an apparent effort to sow a seed of doubt as to their continuing viability, the Plaintiff notes that the LASC "partially struck down as unconstitutional" the confidentiality provisions of Rule XIX in *In re Warner*, 05-1303, (La. 4/19/19); 21 So. 3d 218. Plaintiff's Memorandum at p. 8.  While that is true, when the facts of the case and the LASC's reasoning are explained (which the Plaintiff does not do), it becomes clear that the Plaintiff would have been better off to leave *Warner* out of this discussion.

Initially, *Warner* does not bear upon the issues directly before this Court or support the Plaintiff's request for special access to confidential lawyer-disciplinary documents.  The dispute in *Warner* centered on whether specific participants in the disciplinary process – *i.e.*, a lawyer-complainant and his counsel – could be disciplined for divulging otherwise confidential information *that they already had in their possession*.  *Warner*, 21 So. 3d at 224-25.  Utilizing a First Amendment analysis, the LASC concluded that punishing the respondents under those circumstances would violate their rights to free speech.  However, a drastically-different situation is presented when (as here) a person is trying to compel access to information that he does *not* have.[12]  It follows that cases like *Warner* holding that a person cannot be restrained from communicating information already in his possession cannot be bootstrapped to compel governmental entities to provide information in the first instance.  *Warner* and its limited holding

---

[12] *See Los Angeles Police Dep't v. United Reporting Publishing Corp.*, 528 U.S. 32, 40 (1999) ("This is not a case in which the government is prohibiting a speaker from conveying information that the speaker already possesses.") (citations omitted); *Houchins v. KQED, Inc.*, 438 U.S. 1, 9 (1978) ("But an analysis of those cases reveals that the Court was concerned with the freedom of the media to *communicate* information once it is obtained; neither case intimated that the Constitution *compels* the government to provide the media with information or access to it on demand.") (emphasis in original).

of unconstitutionality thus are no help to the Plaintiff.  *Warner*, 21 So. 3d at 262 ("Our decision today is limited.").

There is more, as even a casual reading of *Warner* shows that the holding actually undermines the Plaintiff's position.  In discussing less-restrictive alternatives to a blanket application of Rule XIX, § 16, the LASC opined that it "could simply adopt a rule which specifically prohibits the use of information gained in a disciplinary proceeding in civil or criminal proceedings."  *Warner*, 21 So. 3d at 261 (citations omitted).  Additionally, multiple times in the opinion, favorable reference was made to the testimony of Steve Corbally, a former investigator from Massachusetts who testified that the disciplinary system in that state with duties of confidentiality imposed only on disciplinary counsel and the "Board of Bar Overseers" (an entity that, upon information and belief, occupies a role similar to the LADB):

> Mr. Corbally stated that during his term of service as an investigator, Massachusetts only imposed confidentiality upon the office of disciplinary counsel and the Board of Bar Overseers.  Mr. Corbally testified that although confidentiality was not imposed upon either the complainants or respondents in attorney disciplinary matters, the discipline system in Massachusetts, as a whole, functioned very well.
>
> *     *     *     *     *
>
> According to Mr. Corbally, the Massachusetts rule in place at the time of his employment only imposed confidentiality on employees or agents of the disciplinary agency.

*Id.* at 227, 259.  In relieving "non-agency participants" of any "gag order" in place under Rule XIX, therefore, the LASC seems to have been comforted by assumptions that: (1) confidential disciplinary information could be excluded from use in civil litigation; and (2) the LADB and ODC would continue to be bound by confidentiality.  Enforcement of the subpoenas to compel the LADB and ODC to produce confidential information for use in connection with the

Plaintiff's civil claims here would produce the opposite result and run counter to the wishes of the LASC – the Louisiana governmental entity that first adopted Rule XIX, § 16 and then explained its purpose, limits, and proper functioning in *Warner*.

In sum, the record and authorities – including the Plaintiff's own concessions in his memorandum – firmly establish that Rule XIX applies to this case, that the LADB and ODC would have to violate Rule XIX to provide any documents beyond those already ordered by Magistrate Judge Knowles, and that a similar confidentiality provision has been relied upon in the federal system to quash a similar subpoena.

Even though it was thoroughly briefed below, and notwithstanding that he refers to it as the "principal" argument, the Plaintiff offers nothing more than a few conclusory statements that Rule XIX should be summarily cast aside.[13]  Conspicuously lacking from the Plaintiff's Memorandum is any meaningful analysis in support of those conclusory statements. Accordingly, separate and independent from any determinations as to the relevance of the confidential disciplinary documents, the Order could be affirmed in recognition of the mandate of Rule XIX.

> **D.**     **This third-party discovery dispute is not about a "privilege," but if it were, the rules of this Court impose confidentiality protections that exceed those prescribed by Rule XIX.**

Though it is not explored in any detail in his memorandum (this Court is merely directed to prior briefing), the Plaintiff's response to this "principal" argument was narrow.  He contended that, in federal-question cases (and only those cases), a federal court is free to

---

[13] Plaintiff's Memorandum at pp. 2 and 13 ("In addition, Movants' principal argument for quashing the subpoenas – that a state rule of disciplinary procedure may serve as a categorical bar to discovery in federal civil rights litigation – is meritless.") ("And although Magistrate Judge Knowles did not reach Movant's argument that Rule XIX – a procedural rule requiring the ODC and LADB maintain the confidentiality of certain disciplinary proceedings – serves as a categorical bar to discovery, that argument is unfounded.").

disregard state law unless a federal "privilege" also immunizes the confidential information at issue from disclosure.

The argument is misguided in several respects. First, Rule XIX does not create a privilege in the traditional sense of that term (for example, the LADB and ODC cannot "waive" confidentiality under Rule XIX, as could be done with a privilege), but rather marks an instance where a branch of state government has restricted access to confidential information in its possession. As cases cited earlier in this memorandum reflect, that is not unusual and does not require a duplicative and parallel federal provision for enforcement in federal court.[14] Second, as discussed in the LADB and ODC's reply memorandum to Magistrate Judge Knowles, the *Williams* plaintiff tried this same argument. The court in that case, however, found that forcing disciplinary counsel to disclose confidential documents would impose an "undue burden," which finding dispensed with any need "to decide whether the documents Plaintiff seeks are 'protected matter' within the meaning of Federal Rule of Civil Procedure 45 *or otherwise privileged*." *Williams*, 2012 WL 748685 at *2 n.3 (emphasis supplied). This Court could employ the same rationale and deny the motion to set aside Magistrate Judge Knowles' Order without having to reach the issue of privilege.[15]

---

[14] *United Reporting*, 528 U.S. at 40 (upholding a state law restricting access to information and noting: "California could decide not to give out arrestee information at all without violating the First Amendment."); *Houchins*, 438 U.S. 1 (upholding a sheriff's policy of conditioning and restricting access to penal facilities.).

[15] The Plaintiff's statement that "Magistrate Judge Knowles already determined that ODC and LADB's arguments of burden is baseless" is misleading. Plaintiff's Memorandum at p. 13. Magistrate Judge Knowles' finding with respect to undue burden concerned only the production of *public* documents. *See* Order at p. 7 ("The Court also finds that movants have failed to demonstrate how any request for public records is unduly burdensome."). To be sure, the Order includes no statement, or even a suggestion, that ordering the LADB and ODC to produce *confidential* documents in violation of state law would not be unduly burdensome pursuant to Rule 45.

21

Nevertheless, if the burden associated with the having the LADB and ODC produce confidential and irrelevant documents is deemed an insufficient basis for quashing the subpoenas, and a corresponding federal policy of confidentiality is needed, one exists.  This Court's own Rules for Lawyer Disciplinary Enforcement ("RLDE") contain a confidentiality provision – and it is broader than Rule XIX, § 16.  As recently amended, RLDE 10.2 provides:

> **Confidentiality.**  Complaints of misconduct and other records of disciplinary proceedings, except orders imposing public discipline, must not be made public by the clerk, court, or [the Lawyer Disciplinary] committee except upon order of the court.  All disciplinary proceedings must be conducted under seal, unless the respondent requests a hearing in open court.  Notwithstanding the foregoing, a complainant or respondent is not prohibited from making public any documents or information in that person's possession.

To quote RLDE 10.2 is to demonstrate that it is more protective, and makes more information confidential, than Rule XIX.  For instance, whereas under Rule XIX the matter is public upon the filing of formal charges (when a respondent-lawyer only stands accused of misconduct), a disciplinary proceeding in this Court is confidential unless and until the respondent-lawyer is adjudged guilty of misconduct.  And even then, only "orders imposing public discipline" – and not "[c]omplaints of misconduct and other records of disciplinary proceedings" – are excepted from confidentiality.

Based on RLDE 10.2, if the exact same subpoenas in this case been served on this Court's Lawyer Disciplinary Committee, they would have been quashed on confidentiality grounds.  Especially considering that the Louisiana Rules of Professional Conduct enacted by the LASC have been adopted to govern the conduct of lawyers in this Court, it would be incongruous to hold that: (1) the federal rule of confidentiality is to be observed, while the corresponding state rule is to be disregarded (at least in federal question, but not diversity,

22

cases); and (2) the viability of confidentiality protection turns on whether a disciplinary complaint is filed against a lawyer with the ODC in Baton Rouge or with this Court in New Orleans.[16]   Regardless, it is simply not true that there is no federal rule in place that would immunize the documents at issue from production in response to the subpoenas.

## IV.   **Conclusion**

On this motion, the Plaintiff bears the heavy burden of proving that the Order is clearly erroneous or contrary to law.   Not only has the Plaintiff failed to carry that burden, all of his arguments have been affirmatively rebutted.   Confidential disciplinary documents, including those that came into existence over a decade after the period at issue, are simply not relevant to the Plaintiff's claims, as Magistrate Judge Knowles held.   And, as the Plaintiff concedes, the requested relief would require the LADB and ODC to violate Louisiana law.   Closely analogous federal case law instructs sensibly that state lawyer-disciplinary agencies cannot be placed in such a position on a third-party subpoena under Rule 45.   Finally, to the extent a parallel federal rule of "privilege" is necessary for Rule XIX to be honored here, this Court's more-protective confidentiality provisions in RLDE 10.2 amply serve the purpose.

In addition to being legally sound, Magistrate Judge Knowles' Order is equitable. Confidential documents will stay confidential, and any public documents for the time period at issue will be produced.   The LADB and ODC, moreover, stand ready to comply with the Order and produce whatever public documents may be available when and if the Plaintiff appropriately

---

[16] *See* RLDE 1.2 ("The Louisiana Rules of Professional Conduct of the Supreme Court of the State of Louisiana ('Rules of Professional Conduct') apply to all lawyers admitted to practice before this court."); *see also* Local Rule 83.2.3 ("This court hereby adopts the Rules of Professional Conduct of the Louisiana State Bar Association, except as otherwise provided by a specific rule or general order of a court.").

modifies and re-issues the subpoenas.  The Plaintiff's motion to set aside the Order, however, should be denied.

Respectfully submitted,

*/s/ Michelle W. Scelson*
Richard C. Stanley, 8487 (T.A.)
William M. Ross, 27064
Michelle W. Scelson, 33428
            Of
Stanley, Reuter, Ross,
Thornton & Alford, L.L.C.
909 Poydras Street, Suite 2500
New Orleans, Louisiana 70112
Telephone:     (504) 523-1580
Facsimile:     (504) 524-0069

Attorneys for the Louisiana Attorney Disciplinary Board and the Louisiana Office of Disciplinary Counsel

## CERTIFICATE OF SERVICE

I hereby certify that on July 22, 2014, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all CM/ECF participants.

*/s/ Michelle W. Scelson*