UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **MICHAEL WILLIAMS** | **CIVIL ACTION** |
| **VERSUS** | **NO. 12-1274** |
| **DISTRICT ATTORNEY PAUL CONNICK, ET AL.** | **SECTION "F" (3)** |

ORDER

On November 5, 2014, the Second Motion to Quash Subpoena Issued to the Louisiana Office of Disciplinary Counsel [Doc. #181], the Second Motion to Quash Subpoena Issued to the Louisiana Attorney Disciplinary Board [Doc. #180], the Motion Filed on Behalf of District Attorney Paul D. Connick, Jr. to Quash or Modify Subpoenas Issued to the Louisiana Attorney Disciplinary Board and the Louisiana Office of Disciplinary Counsel; Alternatively, for Protective Relief [Doc. #182] and the Motion to Compel Production of Handwritten Errata Sheets of Deponent James Maxwell [Doc. #186] came on for oral hearing before the undersigned. Present were Michael Maya, Dustin Cho, William Rittenberg, and Benjamin Haley on behalf of plaintiff, and Glenn Adams, Ralph Alexis, Richard Stanley, and William Ross on behalf of various defendants. After the oral hearing, the Court took the motions under advisement. Having reviewed the motions, the oppositions, all of the other pleadings, and the case law, the Court rules as follows.

**I.     Background**

The District Court has extensively outlined the underlying factual circumstances of this lawsuit, and this Court need not do so again. *Williams v. Connick*, Civ. A. No. 12-1274, 2014 WL 172520 (E.D. La. Jan. 15, 2014).

For purposes of this opinion, it must be noted that on June 4, 2014, this Court heard argument on three earlier motions to quash. On June 25, 2014, this Court granted the motions in part on the ground that the information that the subpoenas sought was not relevant. The District Court reversed that finding. [Doc. #175]. On August 11, 2014, this Court then ordered the parties to file supplemental memoranda to inform it of what issues remain to be resolved. [Doc. #176]. Two days later, plaintiff served amended subpoenas on the Louisiana Office of Disciplinary Counsel ("ODC"), the Louisiana Attorney Disciplinary Board ("LADB") (collectively, "movants"), in which he seeks all disciplinary documents related to 18 former and current Louisiana attorneys. The parties filed their supplemental memoranda, which address the amended subpoenas. Movants then filed protective second motions to quash.

**II.    The Motions to Quash**

    **A.     The Parties' Contentions**

        **i.     Movants' Motions**

Movants argue that two issues remain after the District Court's ruling: (1) Whether plaintiff can overcome that the documents that he seeks are confidential and privileged by law; and (2) Whether plaintiff continues to disregard the temporal scope of discovery put in place by this Court.

Movants contend that Louisiana Supreme Court Rule XIX has the force and effect of substantive law, and this law extends to the confidentiality of Section 16. They note that if a

complaint against an attorney is ultimately "screened out," the complaint and documents associated with it do not become public, and they are prohibited from disclosing that the complaint was even filed.

The new subpoenas seek the same wide range of public and confidential documents for the same 18 current or former Louisiana lawyers, one of whom is a sitting appellate court judge. They seek all memoranda, reports and other assessments of the complaints, *i.e.*, documents that contain the mental impressions and deliberations of ODC prosecutors and adjudicative members of the LADB. They further seek all complaints through the present day and even seek complaints at district attorneys' offices other than the Jefferson Parish District Attorney's Office ("JPDA").

Plaintiff now concedes that many of the documents are confidential and would have to be produced in violation of Rule XIX. Movants note that the confidentiality rule in this Court is even stricter than Rule XIX. Citing case law, movants note that this Court has held that there is a public interest in maintaining the confidentiality of Louisiana State bar Association ("LSBA") proceedings.

Movants argue that this Court may quash the subpoenas because they impose an undue burden on them and thus need not resolve any question of privilege. They contend that confidentiality in disciplinary matters that are not formally charged protects the professional reputations of lawyers against whom complaints are filed without good cause and also encourages candor by the lawyers and potential witnesses in dealing with the ODC. Moreover, many lawyers accept "diversions" and "admonitions," which remain confidential. These lawyers would lose the benefit of confidentiality when they were assured of the confidential nature of the diversions and admonitions. In the future, they maintain, less lawyers will accept diversions or admonitions, knowing that they may be turned over to parties in civil litigation, and thus cause more formal

charges to be filed, thus over-burdening an office already under tight budgetary constraints.

Movants also contend that the Court may quash the subpoenas on the ground of privilege. Distinguishing the case law on which plaintiff earlier relied, movants note that federal courts apply a balancing test to measure the federal interest against the strength of the policies of the underlying state's interest. Movants maintain that there is no doubt that a Louisiana state court would respect confidentiality in this instance given the opinion in *In re Warner*, 21 So. 2d 218 (La. 2009). Again citing this Court's local rules, movants contend that maintaining confidentiality in lawyer-disciplinary proceedings is "intrinsically meritorious" in this Court's "independent judgment." Movants argue that this Court's own local rules supply the express federal privilege.

Lastly, movants contend that plaintiff fails to limit the subpoenas to the time frame in this Court's earlier order, approximately March 6, 1991 through March 6, 2001. Movants maintain that all documents have been destroyed save one, which relates to a disciplinary proceeding against Roger W. Jordan, Jr. Movants provided the citation to the Louisiana Supreme Court's opinion as to Jordan. Movants note that the District Court, in its order reversing this Court, noted that plaintiff had failed to re-serve the subpoenas in compliance with this Court's temporal limitation.

Defendant Paul Connick, Jr. also filed a supplemental memorandum in which he adopts the arguments of the ODC and the LADB and argues that plaintiff has failed to abide by the Court's temporal limitation. Movants and Connick seek their attorneys' fees and costs incurred in filing the motions.

    ii.  **Plaintiff's Opposition**

Plaintiff contends that it is beyond dispute that only a federal privilege, and not a state

confidentiality rule, may prevent the discovery of relevant information in a federal-question case. He maintains that Rule XIX is not a state evidentiary privilege but only a confidentiality rule. Plaintiff contends that *Warner* is inapposite because that case only addressed whether an attorney's use of of confidential disciplinary materials in a state civil-damages lawsuit could form the basis for attorney-disciplinary action. He notes that the Fifth Circuit has held that any privilege created by a state legislature does not apply in federal court of its own force. He also notes that privileges are not favored under federal law, and, in federal-question lawsuits, a state's interest in the enforcement of its privilege is overcome by federal interests, including the interest in seeking the truth in a federal- question case. As this Court has held, the "'application of the federal law of privilege, rather than state law, in civil rights actions is designed to ensure that state and county officials may not exempt themselves from the very laws that guard against their unconstitutional conduct by claiming that state law requires all evidence of their alleged wrongdoing to remain confidential.'" *Chauvin v. Lee*, No. Civ. A. 99-2200, 2000 WL 6268, at *2 (E.D. La. Jan. 4, 2000) (quoting *Torres v. Kusniasz*, 936 F. Supp. 1201, 1208 (D.N.J. 1996)).

Plaintiff maintains that no one involved in a disciplinary proceedings knows whether the information will be confidential because only proceedings that do not result in a formal charge remain confidential. That decision is not made until the end of the investigative process so no one can have confidence that any information will ultimately remain confidential. Plaintiff maintains that any disclosure by the LADB and the ODC may be protected by an appropriate protective order.

Plaintiff contends that the subpoenas are not unduly burdensome. He argues that undue burden is demonstrated through expense and inconvenience and not privacy and/or confidentiality.

He also notes that because the documents are subject to Rule XIX, they are unavailable

5

through any other means. He contends that some of the attorneys subject to the complaints may not even know of their existence because they are confidential. He notes that he has deposed some of the attorneys subject to the subpoenas, and none of them could recall specific instances of disciplinary action.

Plaintiff maintains that the subpoenas comply with the temporal limitations imposed by this Court's earlier order. He notes that the nature of a *Brady* violation is that it is hidden; a criminal defendant may not discover prosecutorial misconduct until years later. Plaintiff here was wrongfully convicted in 1997 but did not discover the suppression of evidence until 2009. He notes that while he agreed to limit discovery of other incidents to those occurring in the ten-year period, he did not intend to offer a "pass" if the misconduct was only discovered recently.

Lastly, plaintiff argues that movants' contention that the documents have been destroyed is unconvincing. First, movants may not have complied with a document-destroying policy, and documents may still exist. He also notes that the policy applies only to the ODC. And the LADB's policy applies only to a "working file," which consists of pre-disposition deliberations, and not the dispositions themselves or the evidence on which they are based. Finally, Rule XIX requires the ODC to maintain permanent records of non-dismissed complaints.

Plaintiff asks the Court not to award movants and Connick their attorneys' fees.

### iii. Movants' Reply

Movants first contend that plaintiff misstates the testimony at the depositions of the attorneys. Citing the transcripts, movants note that plaintiff questioned them about firings at the JPDA, and not complaints or formal charges. Movants thus maintain that plaintiff can obtain the information that he seeks from other means.

Movants also argue that the temporal limitation in this Court's earlier order means the production of only those complaints and/or formal charges filed between 1991 and 2001. It does not, they maintain, mean any complaint and/or formal charge filed later based on conduct between 1991 and 2001.

Movants contend that *American Civil Liberties Union of Mississippi, Inc. v. Finch*, 638 F.2d 1336 (5th Cir. 1981) – a case on which plaintiff relies – only sets forth the test to determine whether a state-law evidentiary privilege applies in federal-question cases. That the *Finch* court declined to apply the state-law evidentiary privilege in federal court, they maintain, is irrelevant. And citing *Grand Jury*, an opinion by Judge Berrigan of this Court, movants note that the District Court there only ordered disclosure of the records because a grand jury proceeding is confidential, unlike this civil action. *In re Application of the United states of Am. for an Order Authorizing the Judiciary Comm'n of La. to Release Certain Records to the Grand Jury*, 936 F. Supp. 357 (E.D. La. 1996).

Lastly, movants argue that a protective order will not work here. They note that counsel for plaintiff has already stated that they will reveal confidential information in open court.

As do the movants, Connick argues that plaintiff misinterprets this Court's temporal limitation. Connick notes that plaintiff earlier agreed that he would not seek "complaints made outside of the relevant time period." Connick notes that the District Court ordered plaintiff to re-serve his subpoenas in compliance with the temporal scope of discovery. In a recent Fifth Circuit decision, *Truvia v. Connick*, 577 Fed. Appx. 317 (5th Cir. 2014), Connick notes that the Fifth Circuit held that *Brady* violations that occurred **after** the plaintiff's conviction were not probative of the plaintiff's policy-or-practice or failure-to-train claims. The Fifth Circuit also required actual *Brady* violations and not mere allegations of misconduct. *Id.* at *9.

7

**B.     Law and Analysis**

Evidentiary privileges in federal courts are governed by Federal Rule of Evidence 501. Except "with respect to an element of a claim or defense as to which state law supplies the rule of decision," privileges are governed by "[t]he common law – as interpreted by the United States courts in the light of reason and experience. . . ." Fed. R. Evid. 501.  Since the only claims and defenses asserted here relate to federal Section 1983 claims, the latter clause applies.  Accordingly, any privilege created by Rule XIX does not apply in federal court of its own force. Instead, movants and Connick ask this Court to find the privilege sufficiently compelling "in the light of reason and experience" to be applied as a matter of federal common law.

When a litigant seeks to assert a privilege "not existent in the common law but enacted by the (state) legislature based on unique considerations of government policy," this Court, like other courts, has tested it by balancing the policies behind the privilege against the policies favoring disclosure. *Fears v. Burris Manufacturing Co.*, 436 F.2d 1357, 1362 (5th Cir. 1971); *Carr v. Monroe Manufacturing Co.*, 5 Cir. 1970, 431 F.2d 384, 388-89 (5th Cir. 1970).  This undifferentiated balancing test may usefully be refined by separating the questions: (1) whether the fact that the courts of Louisiana would recognize the privilege itself creates good reason for respecting the privilege in federal court, regardless of this Court's independent judgment of its intrinsic desirability; and (2) whether the privilege is intrinsically meritorious in this Court's independent judgment. *Finch*, 638 F.2d at 1343.

That the courts of a particular state would recognize a given privilege will not often of itself justify a federal court in applying that privilege.  It is sometimes said that "a strong policy of comity between state and federal sovereignties impels federal courts to recognize state privileges where this

can be accomplished at no substantial cost to federal substantive and procedural policy." *United States v. King*, 73 F.R.D. 103, 105 (E.D.N.Y. 1976) (quoted in *Socialist Workers Party v. Grubisic*, 619 F.2d 641, 643 (7th Cir. 1980)).  But there is almost always such a cost to "the special federal interest in seeking the truth in a federal question case."  *Carr v. Monroe Mfg. Co.*, 5 Cir. 1970, 431 F.2d 384, 388 (5th Cir. 1970).  In some cases, it is true, that interest may be weak. For example, when the substantive rule of decision is nominally federal but incorporates state law by reference, the federal interest in seeking the truth through rigorously independent federal procedures is slight. Similarly, the federal interest may be slight when state-law issues predominate over federal issues in a case involving both, if there is a real danger of forum shopping. Finally, disrespect for a state rule of privilege may be unnecessary if the litigants can obtain substantially the same evidence by an unprivileged route without undue hardship.  Nevertheless, it is well established that "[f]ederal courts will . . . consider state policies supporting a privilege in weighing the government's interest in confidentiality."  *Coughlin v. Lee*, 946 F.2d 1152, 1159 (5th Cir. 1991) (citing Fed. R. Evid. 501).

In this case, however, the federal interest in an independent evaluation of the claimed privilege is particularly strong. The purpose of enacting Section 1983 was to ensure an independent federal forum for adjudication of alleged constitutional violations by state officials; and, as the Fifth Circuit noted in *Carr*, there is a "special danger" in permitting state governments to define the scope of their own privilege when the misconduct of their agents is alleged. 431 F.2d at 389. Moreover, the information contained within the LADB's and the ODC's files can not be obtained by any method other than examination of the files. Finally, the Court perceives no strong state interest in avoiding independent federal assessment of the privilege asserted here.

Privileges are strongly disfavored in federal practice. *See, e. g., United States v. Nixon*, 1974,

9

418 U.S. 683, 710 (1974). The Fifth Circuit has adopted Wigmore's classic utilitarian formulation of the conditions for recognition of a testimonial privilege in *Garner v. Wolfinbarger*, 430 F.2d 1093 (5th Cir. 1970):

> (1) The communications must originate in a confidence that they will not be disclosed.
> (2) This element of confidentiality must be essential to the full and satisfactory maintenance of the relation between the parties.
> (3) The relation must be one which in the opinion of the community ought to be sedulously fostered.
> (4) The injury that would inure to the relation by the disclosure of the communications must be greater than the benefit thereby gained for the correct disposal of litigation.

Only if these four conditions are present should a privilege be recognized. *Id.* at 1100 (quoting 8 J. Wigmore, Evidence § 2285, at 527 (McNaughton rev. 1961)). The Court finds that plaintiff has the better argument as to whether the communications must originate in a confidence that they will not be disclosed. No attorney has any expectation of confidence in attorney-disciplinary proceedings given that every attorney must expect that there may ultimately be a formal charge, at which point all documents become public. Accordingly, the element of confidentiality is not essential to the full and satisfactory maintenance of the relation between the attorneys and the LADB or the ODC. In addition, the relation is not one which in the opinion of the community ought to be sedulously fostered. And the fourth factor weighs in favor of disclosure as well, given that the documents may be protected from disclosure by a strict protective order. The Court thus finds that Rule XIX does not shield the sought-after documents in this federal-question lawsuit.

Neither does the Court find the subpoenas to be overbroad. The temporal limitation is ten (10) years, from 1991 through 2001, and the Court clarifies that this temporal limitation includes any complaints, documents, etc. that arose from ***an alleged incident during this time frame***, whether

10

or not said complaints, documents, etc. arose after the ten-year time frame. The Court further adds that only the parties, their counsel, and their experts shall review the documents produced in compliance with the subpoena, and none of this information is to be used outside this lawsuit. This is further clarified in the conclusion below.

## IV. The Motion to Compel

### A. The Parties' Contentions

#### i. Plaintiff's Motion

At plaintiff's trial, Christopher Landry inculpated him. Landry later recanted and admitted that he had lied at plaintiff's trial. Plaintiff then discovered that Landry's grand jury testimony was inconsistent with his trial testimony.

At the deposition of James Maxwell, Chief of Felony Trials at the JDPA from 1994 through 1996, Maxwell testified numerous times that prosecutors do not see grand jury testimony. The deposition was delivered to all parties on July 3, 2014. On August 6, 2014, plaintiff's counsel received eight pages of errata sheets, in which Maxwell reversed his testimony with regard to whether prosecutors see grand jury testimony. The errata sheets now provide that prosecutors do. The reason given: "Misstatement discovered on review."[1]

Plaintiff deposed Maxwell again about the errata sheets. Maxwell testified that nothing had refreshed his recollection but that he had simply made a mistake on reflection. Maxwell brought a copy of his first deposition testimony to the second deposition. He produced it, and plaintiff noted that his handwritten notes did not match the errata sheets. Maxwell testified that he had only written

---

[1] Because Maxwell failed to produce the errata sheets within 30 days from delivery of the transcript, plaintiff plans to challenge any use of them as procedurally barred under Rule 30(e).

on the deposition testimony the night before the second deposition and that he had handwritten his errata sheets. He also did not know who typed the final ones that he had signed.

Plaintiff asked counsel to produce the handwritten errata sheets, but counsel refused on the ground of work-product privilege. Maxwell testified that his handwritten errata sheets did not set forth legal advice of counsel, nor was he seeking legal advice when he wrote them. Plaintiff thus contends that Maxwell's own testimony belies any reliance on the attorney-client privilege.

Plaintiff contends that the work-product privilege protects only those documents prepared in anticipation of litigation by a party or a party's representative. Maxwell is a fact witness. Citing case law, plaintiff argues that courts have ordered production of analogous factual statement by non-party witnesses even when an attorney drafted the document.

Even if the Court determines that the work-product privilege protects the documents, plaintiff maintains that he has a substantial need for them and can not obtain them through other means. Plaintiff contends that a comparison of the handwritten and final errata sheets goes directly to Maxwell's credibility. The errata sheets address the precise issue in this case, *i.e.*, whether the JPDA had a policy or custom of not providing grand jury testimony as *Brady* material when exculpatory.

### ii.     Defendants' Opposition

Maxwell testified that he contacted counsel to help him prepare the errata sheets. Connick contends that he is a former employee (and a former supervisor) and thus, his communications with counsel are protected. Citing more recent case law than that cited by plaintiff, Connick contends that the trend is to consider draft affidavits and communications with counsel relating to affidavits as covered by the attorney work-product doctrine.

Connick also maintains that the documents are protected because Maxwell sought the advice of counsel as to how to correct his testimony. Maxwell, as a former supervisor, is represented by Connick's counsel for purposes of this litigation. He spoke only to counsel to help him prepare the errata sheets.

Connick further contends that plaintiff can not show a substantial need for the documents because Maxwell testified that the typed errata sheets represent his correct testimony. And lastly, he maintains that plaintiff is not entitled to depose Maxwell for a third time.

### iii.     Plaintiff's Reply

Plaintiff notes that Maxwell has not worked for the JPDA for 18 years and is not a party or a party's representative in this lawsuit. He is not represented by counsel for the JPDA. Plaintiff also maintains that the handwritten notes represent only underlying facts and not the mental impressions of counsel. Plaintiff notes that all of the cases on which the JPDA relies were based on draft affidavits in which counsel aided in the drafting.

Plaintiff also argues that there is no evidence that Maxwell prepared his handwritten errata sheets in anticipation of litigation. He is not a defendant in this lawsuit.

### B.     Law and Analysis

Considerations of the work-product doctrine are governed by federal law. *Dunn v. State Farm Fire & Casualty Co.*, 927 F.2d 869, 875 (5th Cir. 1991). The work-product doctrine is "distinct from and broader than the attorney-client privilege." *United States v. Nobles*, 422 U.S. 225, 238 n.11 (1975). Federal Rule of Civil Procedure 26(b)(3) protects against the discovery of "work product," defined as documents and tangible things that have been prepared in anticipation of litigation or for trial by or for a party or a party's representative, including the party's consultant.

13

The burden of demonstrating applicability of work product protections rests on the party invoking it. *Hodges, Grant & Kaufmann v. U.S. Gov't, Dep't of the Treasury, I.R.S.*, 768 F.2d 719, 721 (5th Cir. 1985).

A court must initially determine whether the documents were prepared in anticipation of litigation; the mere fact that litigation eventually ensues does not, alone, protect all documents related to the subject matter of the litigation. *Binks Mfg. Co. v. Nat'l Presto Indus. Inc.*, 709 F.2d 1109 (7th Cir. 1983). A document is only considered work product if it is primarily concerned with legal assistance. *Loctite Corp. v. Fel-Pro, Inc.*, 667 F.2d 577, 582 (7th Cir. 1981). Furthermore, work product protections only apply to materials prepared in anticipation of litigation which set "forth the attorney's theory of the case and [its] litigation strategy." *Nat'l Labor Relations Bd. v. Sears, Roebuck & Co.*, 421 U.S. 132, 154 (1975).

Rule 26(b)(3) regulates the scope of the allowable discovery of attorney work product and instructs the court to "protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation." Fed. R. Civ. P. 26(b)(3). A party may only obtain discovery of documents prepared in anticipation of litigation or for trial upon showing that the party seeking discovery has (1) substantial need of the materials to prepare for his or her case and (2) that the party can not obtain the substantial equivalent of the materials by other means without undue hardship. *Id.* The "work-product rule accords special protection to work product revealing the attorney's mental processes." *Herwig v. Marine Shale Processors, Inc.*, Civ. A. No. 92-2753, 1994 WL 10156 (E.D. La. Jan. 11, 1994).

For the following reasons, the Court grants the motion. Work product protections only apply to materials prepared in anticipation of litigation which set "forth the attorney's theory of the case

14

and [its] litigation strategy." *Nat'l Labor Relations Bd. v. Sears, Roebuck & Co.*, 421 U.S. 132, 154 (1975). The handwritten errata sheets will not set forth the attorneys' theory of the case or their strategy. Maxwell is not controlling the litigation here. Moreover, the handwritten errata sheets will reveal no more than underlying facts, and underlying facts are not sheltered by any privilege. *S. Scrap Material Co. v. Fleming*, No. Civ. A. 01-2554, 2003 WL 24174516, ay *17 (E.D. La. June 18, 2003). Indeed, the handwritten errata sheets represents Maxwell's – a witness's – *testimony*, which is unprotected by the work-product doctrine.

Moreover, the attorney-client privilege does not apply here because Maxwell himself testified that his handwritten errata sheets did not set forth legal advice of counsel, nor was he seeking legal advice when he wrote them. The Court thus rejects this argument.

**V.     Conclusion**

For the foregoing reasons,

**IT IS ORDERED** that the Second Motion to Quash Subpoena Issued to the Louisiana Office of Disciplinary Counsel [Doc. #181], the Second Motion to Quash Subpoena Issued to the Louisiana Attorney Disciplinary Board [Doc. #180], the Motion Filed on Behalf of District Attorney Paul D. Connick, Jr. to Quash or Modify Subpoenas Issued to the Louisiana Attorney Disciplinary Board and the Louisiana Office of Disciplinary Counsel; Alternatively, for Protective Relief [Doc. #182] are DENIED. However, any documents produced by movants are subject to the following protective order: Only the parties, counsel and their experts may view the documents produced by the LADB or the ODC. No document is to be used outside of this lawsuit or made public for any reason without an order from this or the District Court.

**IT IS FURTHER ORDERED** that the Motion to Compel Production of Handwritten Errata

Sheets of Deponent James Maxwell [Doc. #186] is GRANTED.

**IT IS FURTHER ORDERED** that the earlier motions to quash [Doc. Nos. 144, 146, and 148] are DISMISSED AS MOOT.

New Orleans, Louisiana, this 26th day of November, 2014.

*[signature: Daniel E. Knowles, III]*

**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**